Good morning, Your Honors. May it please the Court. Gina Canan of Mountain States Legal Foundation for the Appellant Landowners. The District Court, in this case, erred in dismissing landowner's complaint for three reasons. First, the District Court should have applied a straightforward ex parte young inquiry. Second, the District Court erred in holding the Supreme Court's decision in Coeur d'Alene controls. Third, the District Court erred in grafting a colorable claim test onto the ex parte young analysis. The Supreme Court, in Verizon Maryland v. Maryland, reaffirmed that a straightforward ex parte young inquiry asks whether the complaint alleges an ongoing violation of federal law and whether the complaint seeks relief properly characterized as prospective. Landowner's complaint satisfies both these prongs. First, landowners allege the application of the challenge policy to their properties violates Section 2F of the Submerged Lands Act and Sections 6A and 6M of the Statehood Act. Landowners specifically allege their properties fell under Section 2F because the streambeds on their properties were left unmeandered by the General Land Office surveys and were lawfully conveyed to landowner's predecessors. All before statehood. Correct, Your Honor. In 1913 and 1916, specifically. Second, landowners sought injunctive and declaratory relief against application of the challenge policy to their properties. The District Court's opinion was premised in applying Coeur d'Alene to the facts of this case. Coeur d'Alene is distinguishable for several reasons. First, the tribe's suit was a functional equivalent of a quiet title action in Coeur d'Alene because it was a functional equivalent of a suit for retroactive damages against the State. And only suits seeking prospective relief are permitted under Ex parte Young. How is that different? How is it really retroactively seeking damages versus what's happening here? It's a boundary dispute in a manner of speaking. Justice O'Connor referred to this as quiet title. So I'm not really sure what your argument is about how these are distinguishable on this basis. Well, the argument is, Your Honor, in Coeur d'Alene, the tribe was seeking lands that had been not only owned by, but the State had exercised regulatory jurisdiction over them for over 100 years. Here, landowners, the streambeds on landowners' properties have been patented to landowners, and not only that, their predecessors paid for the lands. They've been paying taxes on the lands. Yes, I appreciate that, but you see what I'm trying to get at? You just characterized this as you're trying to distinguish Coeur d'Alene and say that that is really seeking a retrospective ruling, and I don't know how it's different on that basis. The difference is the prospective relief sought here is to enjoin appellees from interfering with landowners' property interests in a way that conflicts with federal law. Appellees are still free to allege title to landowners' properties on any basis that doesn't conflict with federal law, specifically Section 2F. They themselves are free to file a quiet title action if they have a lawful basis for doing so. But all landowners are seeking to do here, and I think they recognize that the district court, that their prayer for relief was not accurately worded. All they're seeking to do here is prevent application of the challenge policy to streambeds that fall under Section 2F, and in that sense, enjoin appellees from directly violating federal law with regards to their properties. Isn't your suit essentially to have your clients' ownership in the land justified? Well, we believe that the landowners' ownership of the land is justified by operation of their patents, yes. Okay, so the answer is yes? Yes, Your Honors. So any time that you're trying to justify that land, isn't that like a quiet title action? I don't believe so, Your Honor. That's the part where I'm having problems with your argument. Having read what the Supreme Court has said about that, why isn't this like a quiet title action? Well, for several reasons. The first is that landowners are not seeking to deprive the state of all regulatory jurisdiction over the land's issue. They're trying to justify their ownership in the land. Of course, you're not trying to do more than you have the right to do, but I think we had common ground before that they own the land and they want those land ownership rights protected. So if you're taking away that in any way, isn't that like a quiet title action? No, because landowners aren't seeking to quiet title to the stream that's at issue. They're only seeking to enjoin appellees' actions insofar as they conflict with federal law. If appellees have another basis... Haven't they already taken the action that you're saying you want to enjoin? They've already made the determination that those are public lands, that the submerged waters in your client's land are public lands. They've made that determination, and what you're doing is coming in to challenge that determination. So if I understand Your Honor's question correctly, you're concerned about the difference between retroactive and prospective relief here, that we might be seeking to retroactively invalidate. Right, to undo something they've done. So if we had waited... Well, if we had filed suit before the magnetability determinations came out, honestly, we would have gotten kicked out on standing grounds. There wouldn't have been an injury yet because we wouldn't have been able to say whether the challenge policy applied or not, whether the state would come in and apply that challenge policy to our streambeds. We had no indication that they would since they had been landowners' streambeds and considered non-navigable since prior to statehood. To some extent, and I think this Court's decisions recognize that to some extent, any request for relief under Ex Parte Young is slightly retroactive because you have to allege an injury in order to have standing in federal court. And you're seeking to enjoin further enforcement of this new policy because you think it conflicts with federal law. Is the federal law that you're thinking this policy conflicts with the federal patent? Not only the federal patent, Your Honor, but also Section 2F of the Submerged Lands Act and Section 6A and 6M of the Statehood Act. Insofar as landowners' streambeds were lawfully surveyed by the General Land Office and were lawfully conveyed to their predecessors, we argue they fall directly within the plain language of Section 2F. And that allegation must be taken as true at this point in the proceedings. And the Tenth Circuit in Hill v. Kemp was also faced with a motion to dismiss on sovereign immunity grounds. And it found that it was required to view the light most favorable to the plaintiff and accept the plaintiff's allegations as true. So in that sense, Apelli's allegations of a colorable claim is fundamentally inconsistent with accepting landowners' allegation as true, that the streambeds on their properties fall within Section 2F of the Submerged Lands Act. And any argument to the contrary is a factual issue that really needs to be settled at trial. Another reason Coeur d'Alene is distinguishable is in Coeur d'Alene, the tribe sought to deprive the state of all regulatory jurisdiction over the lands at issue. In Duke v. Davis, this court said, In Coeur d'Alene itself, Justice O'Connor recognized the difference between enjoining a specific state activity and depriving the state of all regulatory authority. Here, landowners only seek to enjoin a specific state activity that conflicts with federal law. They do not seek to deprive the state of all regulatory jurisdiction over the lands at issue. A colorable claim test is also inappropriate for several reasons. First, none of the cases applying Coeur d'Alene to sovereign interests utilized a colorable claim test. In Agua Caliente, this court didn't care whether or not the state had a colorable claim to the tax revenues at issue. If your client retained ownership of this property, wouldn't much of the state's regulatory authority be affected? For example, the client would be the one to be taking the gravel out of the streams and not leaving it there or doing whatever the government wished to do with the gravel. Well, to some extent, private lands versus government lands, obviously the state doesn't have the right to lease Locano's lands to Locano, but they would retain taxing and permitting authority. The state retains jurisdiction over all waters. But then wouldn't your client be dictating to the state what they could regulate? No. And that's evidenced by the fact that Apelli's answer brief lists some of the things that it might not be able to do if landowners in this case are successful. And those included the loss of lease revenues and royalties. And those are more akin to the injuries alleged in Elephant Butte v. Department of Interior, where the court found adjudication of the validity of New Mexico's right to lease revenues was not barred by the 11th Amendment. And also in Lipscomb v. Columbus School District, the court held adjudication of rental rates on school trust lands was permitted. But as far as the reach of your claim, it will have less control. The state will have less control because you're trying to diminish the controls. Now, the language of Justice O'Connor, which we know is now the holding of the case that we follow, is very careful on that. We have repeatedly emphasized the importance of submerged lands to state sovereignty. Control of such lands is critical to the state's ability to regulate the use of navigable waters. Why wouldn't your effort to diminish control be within the thrust of the opinion? Because the issue in this case isn't the state's control over navigable waters. The issue is whether they're navigable in the first place. Well, that's true. Assuming that they are navigable waters and assuming your client claims ownership, regardless of what they want to do with that ownership, it's going to interfere, as I understand, with the statement that Justice O'Connor makes. I'm having trouble with that part of your opinion. I understand, Your Honor. And I think this case isn't falling within Justice O'Connor's language in Coeur d'Alene because, as this Court recognized in Duke Energy, in joining a specific state activity, even if it is a state of sovereign interest, there was the governor commandeering energy contracts during an energy crisis. Even to the extent that some state sovereign interest is impinged, that's not enough to bring it necessarily within the scope of Coeur d'Alene. The question is always, going back to a straightforward ex parte Young inquiry, was it retroactive? Was it properly characterized as a violation of federal law? And in Duke Energy, because the governor was violating federal law, plaintiffs had the right to seek to enjoin him exercising that power in a way that conflicts with federal law. And that's all we're trying to do here, is enjoin the state from interfering with landowners' properties in a way that directly conflicts with Section 2F of the Submerged Lands Act. Could you file the suit in state court? Well, in Agua Caliente, this Court recognized that the availability of a state forum isn't determinative, but even if that was determinative, the scope of Alaska's Quiet Tidal statue isn't really applicable here because the statue under which Alaska is authorized to make navigability determinations doesn't authorize the state officials to create an interest in the property and it doesn't constitute final agency action. So it's likely that if landowners filed suit in state court, they would face a motion to dismiss. And furthermore, it would be burdensome and unrealistic to expect every landowner in Alaska whose properties are impacted by a navigability determination to file a Quiet Tidal action. That would be really difficult, especially when we have multiple landowners on one stream bed. You'd have to enjoin every landowner to the action. The cost for both the court and the landowners would be significant. And as the Supreme Court recognized in Leo Sheep, a owner of a federal patent shouldn't have to go to such lengths. The federal patent is determinative. If your owners have no more questions, I'd like to reserve the remainder of my time. Thank you. May it please the Court, my name is Jessie Alloway and I represent the defendants, Joe Balish, who I think should be substituted for Daniel Sullivan as the current commissioner of the Alaska Department of Natural Resources, and Brent Goodrum, the director of the Division of Mining, Land, and Water, also of Alaska Department of Natural Resources. This is a title dispute between the state of Alaska and private landowners, the answer to which depends on a federal question. The upland owners cannot file Quiet Tidal action in federal court to the submerged lands because the 11th Amendment clearly prohibits federal jurisdiction to determine a state's interest in property without the state's consent. But the question for this court is whether the appellants can seek injunctive and declaratory relief to prevent Alaska officials from claiming title to these submerged lands on behalf of the state through a navigability policy that is meant to identify and protect the state's interests in submerged lands under navigable, in fact, and tidally influenced waters. This case falls within the Supreme Court's decision in Idaho v. Coeur d'Alene, which rejected a similar or an attempted application of the Young Doctrine in a similar context because, as in the Coeur d'Alene case, the plaintiffs or the landowners have alleged the functional equivalent of a Quiet Tidal action that implicates the state's sovereignty interests in these submerged lands. What's your response to opposing counsel's point that this would really be more than that, that it's not just a Quiet Tidal action, that the two cases aren't exactly analogous in that regard? In one, there was a sovereign, so if Idaho lost, they were going to completely lose all regulatory control, and that's not true in this case. What's your response to that? Yes, Your Honor, I do recognize that that's a difference between this case and the Coeur d'Alene case, and the state may keep some limited regulatory control, particularly over the water column, and that it would still regulate the fish within the water body and pollutants and such as that. However, I don't think that that was the core basis of the Court's decision in Coeur d'Alene. That case was really concerned, as Justice Wallace or Judge Wallace pointed out, that the Quiet Tidal action would remove the sovereign character of the submerged lands. So, for instance, the principal opinion that Justice Kennedy wrote on page 284, he explains that the purpose of the Equal Footing Doctrine and the strong presumption of state ownership is that navigable waters uniquely implicate sovereign interests. Right, but the difficulty with that, counsel, forgive me for interrupting, but I'm always mindful that your clock is ticking, and the difficulty with that is the one that the district court identified himself. He said, you know, this is entirely circular reasoning because we don't know if they're navigable or not. Certainly, and the state's point is that we are asserting that they are navigable, and we have the legal basis to do that. There's also the factual basis, which the appellants have attached to their complaint. Because of the 11th Amendment, there's no federal jurisdiction to actually reach the merits of that case, but state courts do have the authority to decide federal questions, and there is a state form available should the plaintiffs wish to proceed with that. What's your answer to opposing counsel's point that she thought that there would have to be a whole lot of individual Quiet Tidal actions filed? Well, certainly it's difficult to Quiet Tidal on a tidal stream, but you do have to allege all the private party owners. But if that case should proceed and there was an Alaska Supreme Court decision on the interpretation of the Submerged Lands Act, the state would be bound by that determination, and then it would affect its ability to make a claim to the submerged lands in all river bodies and tidally influenced waters throughout the state. So really, it would take one case to affect the state's navigability policy. Thank you. But I do want to get back to your question regarding the regulatory power and that difference between the Idaho case and this situation, simply because I do think that it's important to actually look at what the court was deciding and their concern in the Coeur d'Alene case. Again, getting back to the fact that the court said that by quieting tidal and saying that the state of Idaho wouldn't have an interest in these lands, you're essentially removing the sovereign character. That's important because the state of Alaska and all states that have ownership interests in the beds of these submerged lands have a public trust duty. These are public lands that are subject to availability and use by everyone, and the states have an obligation to regulate, improve, and secure submerged lands for the benefit of every individual. But doesn't this get back to it being circular since we don't know whether these are navigable or not? Certainly, Your Honor. But I think that still exists because even in Idaho v. Coeur d'Alene, the parties did agree that they were navigable, in fact, but they never agreed on the ownership interest. Well, does it matter that in the Idaho case, those lands had been claimed by and I think acknowledged to be owned by Idaho forever since statehood, and that in this case it's just the opposite? These patents date back about 100 years. They date back about 100 years, but I'd also point to the Alaska Right-of-Way Act, which was enacted in 1898, which basically applied the equal footing doctrine to the territory of Alaska, and they said all waters under tidally influenced or navigable, in fact, waterways were going to be held in trust in the territory for the future states, and that the executive under the Homestead Act, which that act applied the Homestead Act to the territory of Alaska, didn't have the authority to convey the beds of tidally influenced or navigable, in fact, waterways. So I appreciate that, but I'm not sure that I understand the answer to my question. Did I hear it? Well, my position would be that it's not as the state is seeking to assert an interest now that it didn't have 100 years ago. The state's interest actually sprouted from the Right-of-Way Act, which occurred over 100 years ago in 1898 through the passage of the Right-of-Way Act. But you agree the state hasn't asserted the interest? Certainly, yes, Your Honor, but the state recognizing there's a long line of tidal actions dealing with the state of Alaska and the federal government has long asserted its interest in these water bodies. It definitely has a difficulty in identifying each particular one, and there's a set of federal criteria that needs to be applied in order to determine whether a waterway is actually navigable, in fact, for tidal purposes or tidally influenced. Okay, so here's the question again. Does it matter, since we agree that the state hasn't asserted the interest previously, does that matter? Is that a distinction that matters between the Coeur d'Alene case and this one? I don't think so, Your Honor. I think in Coeur d'Alene you just simply had a body of water that was obviously navigable to everybody. In this situation, you don't have that. You have different bodies of water that the state, on a case-by-case basis, when a landowner comes and says, we may want to extract some gravel from this waterway, what do we need to do? DNR looks at it. They make a determination. Yes, the state asserts an ownership interest. You need to get a material sales permit. And in this case, actually, according to the letter that DNR sent to the appellants that they've attached to their complaint, the landowners acknowledge that Lemon Creek in particular is highly influenced. So this isn't a surprise to them that the state would assert an ownership interest. So skipping back, I think that addresses one prong of the Coeur d'Alene case, which is that this implicates a special sovereignty interest. I'd also want to go back to Judge Wallace's concern over whether this was a functional equivalent of a quiet title action. In their complaint, the upland owners allege that their pre-statehood conveyances contain certain submerged lands that were not meandered as part of the public survey and were lawfully patented or conveyed to their predecessor in interest. The state disputes that ownership interest to at least the name upland owners because although the submerged lands were not meandered, the state contends that they were not lawfully patented or conveyed because they did, in fact, contain the beds of navigable, in fact, entirely influenced waterways. So to Judge Wallace's concern, at its core, this is a dispute over land ownership, which is further illustrated by the relief sought by the upland owners. Although the plaintiffs did withdraw their request for a judgment declaring that the state had no title interest to these submerged lands, they still seek a declaratory and adjunctive relief that would essentially prevent the state from ever claiming title or asserting its ownership interest in these submerged lands again. So what is the effect of the determinations that were served on the two bodies of water, Salmon Creek and Lemon Creek? Once that determination is made, does the state have to pursue – are those determinations self-executing? That's what I'm wondering. Does the state now have to pursue some action to get the title to the property changed? If there was a cloud on the state's title, then yes. The state would need to pursue a quiet title action. The DNR's decision is not a final agency action. It's mostly a statement on behalf of the state that, yes, we do claim an interest in this property, letting the property or the upland owner know. If the upland owner intends to contest that interest, then there would be a cloud on the state's title and it would need to file a quiet title act. So they've obviously contested here, right? So then your next step, the government's next step would be to file a quiet title. If it chose to do so, yes, and it would proceed in state court for that. Yeah, another question I have. Once these creeks are declared navigable waters held in trust by the state, is there any compensation that goes to the people who thought they held it lawfully pursuant to the patents that their ancestors received from the federal government? Or do they have a claim against the federal government for having not properly surveyed the waters here and properly conveyed patents on the lands? You know, I don't know the answer to that question, Your Honor. I would say that the state doesn't have a mechanism for compensating any landowners in that particular situation. Its position is that we've always held these lands since statehood, but I would believe that research would be needed to occur to see whether the landowners had a claim against the federal government based on their federal patents. Because they never had held, they never properly held title. It's void of initio, and so there wouldn't be any sort of taking involved. But these folks have been paying taxes on this land all along, right? No, I don't know the answer to that as well. Presumably so. I just have a follow-up question I hadn't thought of until Judge Wardlaw asked hers about your answer about if somebody took an action that would cloud the state's title, you might proceed, but hasn't the property owner's title been clouded by the state's action? Yes, and they've alleged that throughout their complaint in the state's position. You know, I don't want to waive any potential defenses that the state might have in the state court, but even though DNR's decision isn't a final agency action, it still clouds their title, and they could certainly have that allegation that there's a clouded title when they bring their quiet title action in state court. So at the moment, they couldn't convey this land. Their hands are pretty well tied up, aren't they? Yes. So I think we've pretty much covered why the state believes that the Coeur d'Alene case is applicable. So with my remaining time, I did want to address the colorable claim issue, unless the court has any other questions regarding Coeur d'Alene. Despite any confusion or disagreement between the parties over whether to apply a facial attack standard or a factual attack standard to this motion to dismiss, the state's position below the district court and to this court has been pretty consistent in that the state only needs to make a colorable claim or a non-frivolous showing that it has an ownership interest in this property. You're not challenging Judge Burgess's importation of the colorable claim standard? No, absolutely not, Your Honor. And if you actually look at footnote 53 of Judge Burgess's decision, he goes on to state that even if he applied the factual attack standard, he would not have converted this case to a summary judgment, and the analysis would have been the same. He's simply, I think, acknowledging that there's some confusion and difficulty in applying these types of standards to this case where the state is actually not challenging that the plaintiffs have properly stated a federal question under the Submerged Lands Act. The state has just come in and said, even if you've stated a cause of action or a federal question, this case cannot proceed because the state has a sovereign immunity claim and these are state lands. So then the question for this court is, what does the standard of review, what does the state have to prove as far as its interests? And I think if you look to those cases dealing with the Federal Quiet Title Act as well as the in-rent cases of the Supreme Court, that answer is it needs only show a colorable claim in the property. All right. Thank you very much, counsel. Your time is up. Thank you. I think you had some time remaining, Ms. Cannon. Thank you, Your Honor. There's just a couple points I wanted to address. One is that we believe Section 2F of the Submerged Lands Act is consistent with the equal footing doctrine. Congress said it legislated against the backdrop of the equal footing doctrine, and you mentioned a cloud being placed on landowners' title, and that's right there in the legislative history of Section 2F. That was the purpose. The purpose of excluding beds of unmeandered streams is to prevent a cloud being cast upon thousands of acres of land. And the state was bound by the terms in the Submerged Lands Act when it was admitted pursuant to those terms. The Supreme Court in Alaska of the United States said the provisions of the statehood act themselves suffice to overcome the state ownership presumption arising from the equal footing doctrine. So while the equal footing doctrine may provide the backdrop, Section 2F here speaks to the specific circumstances in front of this Court, and landowners' patents fall directly under Section 2F. Going to the question of whether the patents were lawfully conveyed, that's a question of fact. It's best saved for trial. And if we accept landowners' allegations as true here, we have to accept that their lands fell under Section 2F of the Submerged Lands Act. All right. Thank you very much, counsel. Thank you. Locano Investments v. Joe Baelish will be submitted, and the session of the Court is adjourned for today.
judges: WALLACE, WARDLAW, CHRISTEN